O

# United States District Court
# Central District of California

| | |
|---|---|
| JAMES SHAYLER, | Case No. 2:20-cv-00235-ODW (KSx) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [33]** |
| VINOOD PATEL; *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

On January 8, 2020, Plaintiff James Shayler filed a complaint against Defendants Vinood and Chaya Patel (collectively, the "Patels") and Jose Uribe for violations of the Americans with Disabilities Act ("ADA") and the California Unruh Act. Pending before the Court is Uribe's motion to dismiss Shayler's Complaint ("Motion"). (Mot. to Dismiss ("Mot."), ECF No. 33.) For the reasons discussed below, the Court **GRANTS** Uribe's Motion.[1]

## II. FACTUAL BACKGROUND

Shayler is a California resident who is allegedly disabled under the ADA. (First Am. Compl. ("FAC") ¶ 1, ECF No. 25.) He has had two knee replacement surgeries, suffers from an acute pinched sciatic nerve and arthritis, has limited mobility in his

---

[1] After carefully considering the papers filed related to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

legs, and uses a walker when needed. (FAC ¶ 1.) In 2019, Shayler attempted on three separate occasions to visit V & N Nursery ("Nursery"), a business establishment owned and operated by Uribe and located on the Patels' property. (FAC ¶¶ 2–3, 12.)

Despite having been newly constructed or remodeled, the Nursery lacked accessible parking spaces or reserved spaces nearest the entrance in compliance with the ADA. (FAC ¶¶ 12, 17, 21.) When Shayler visited the Nursery in 2019, he allegedly encountered further ADA violations, including a lack of appropriate parking signage, accessible spaces, unloading and loading access aisles, and an appropriate and accessible travel path. (FAC ¶ 22.) Shayler alleges that the barriers on the Nursey are readily achievable to remove. (FAC ¶ 29.) Shayler intends to return to the Nursery but is deterred by the physical barriers that have denied him access in the past. (FAC ¶ 27.)

On January 8, 2020, Shayler filed the Complaint alleging claims for violations of the ADA and the California Unruh Act. (FAC ¶¶ 33–59.) On January 19, 2020, the Court dismissed Shayler's California Unruh Act claim after declining to exercise supplemental jurisdiction over the state law claim. (Min. Order, ECF No. 16.) Now, Uribe moves to dismiss Shayler's ADA claim. (Mot.)

### III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. In resolving a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

1039 n.2 (9th Cir. 2003)). The court does not need to presume the truthfulness of the plaintiff's allegations. *Id*.

Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

## IV. DISCUSSION

Uribe moves to dismiss Shayler's remaining ADA claim on the bases that the claim is moot, Shayler lacks standing, and Shayler fails to sufficiently state a claim. (*See* Mot.)

**A. Mootness**

The Court first addresses whether Shayler's ADA claim is moot. A claim may become moot if (1) subsequent events have made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998). Because the only remedy available under the ADA is injunctive relief, the claim becomes moot if a defendant can show that it has remedied the ADA violation prior to trial. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) ("[A] defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."); *see e.g. Whitaker v. SQS LA LLC*, No. CV 19-6048-GW-RAOX, 2020 WL 3802908, at *3 (C.D. Cal. Apr. 1, 2020) (finding the floor plan of the restaurant demonstrating compliance sufficient evidence to moot architectural-based ADA claims).

Here, Uribe asserts that Shayler's ADA claim is moot because the alleged violations have been remedied, and in support, he offers a declaration by Vinood Patel plus an exhibit. In other words, Uribe factually challenges jurisdiction by questioning the veracity of the allegations in the complaint. Thus, the Court considers evidence

beyond the complaint to assess whether the claim is moot.[2] *See Safe Air for Everyone*, 373 F.3d at 1039.

Vinood Patel declared that in November 2019, the tenant (Uribe) paved over some of the open areas adjacent to the Nursery. (Decl. of Vinood Patel ¶ 4, ECF No. 33-2.) Then, on March 11, 2020, Patel hired a Certified Access Specialist to inspect his property. (Decl. of Vinood Patel ¶ 5.) Vinood Patel attaches to his declaration a letter from the inspector, Ernest Castro, stating that "[t]he parking facility has a total of 9 parking spaces with one designated as an accessible stall in accordance with the ADA Standards and CA Building Code." (Decl. of Vinood Patel Ex. 1, ECF No. 33-2.) Thus, Uribe argues that the Nursery no longer presents any access barriers to Shayler, and therefore, the claim is moot. (Mot. 13–16.)

The Court finds that Uribe has adequately disputed the truth of the allegations. The burden thus shifts to Shayler to counter Uribe's evidence and establish jurisdiction. *See Kokkonen*, 511 U.S. at 377; *Whitaker v. GGET Larchmont LLC*, No. CV 19-9411-DMG (JCx), 2020 WL 1972291, at *4. However, Shayler fails to meet his burden.

Rather, Shayler attacks an inconsequential point in Vinood Patel's declaration—that parking was never offered prior to November 2019. Shayler attaches as evidence a declaration by his attorney, Anoush Hakimi, and screenshots from Google Maps to establish that cars were parked in the space next to the Nursery in December 2017. (*See* Decl. of Anoush Hakimi, ECF No. 38-2; Decl. of Anoush Hakimi Ex. A, ECF No. 38-3.) However, these screenshots do not necessarily contradict the statement in Vinood Patel's declaration, as the cars could have been his own or those of his suppliers; in other words, the screenshots do not necessarily prove

---

[2] Shayler argues that Uribe has made a facial attack and thus, the allegations in the complaint should be accepted as true. (Opp'n to Mot. ("Opp'n") 3–4, ECF No. 38.) However, Shayler himself attaches declarations and evidence outside the complaint in support of his arguments. As it is apparent from the Motion, that Uribe is mounting a factual attack, the Court will address it as so.

that Defendants offered parking for their customers when the Google Maps images were captured.

More importantly, the screenshots do not refute the statement by the Certified Access Specialist ("CAS statement") that the parking lot next to the Nursery is now ADA compliant. On this point, Shayler argues that the relatively short CAS statement does not describe what measurements and metrics the expert used to determine that the parking lot no longer had access barriers. (Opp'n 13–14.) The Court concurs that the letter from the Certified Access Specialist lacks detail; however, it is the only evidence presented on the issue of mootness. It is Shayler's burden to establish jurisdiction, and he has failed to do so. *Whitaker v. GGET Larchmont LLC*, No. CV 19-9411-DMG (JCX), 2020 WL 1972291, at *4 (C.D. Cal. Mar. 17, 2020) (finding that defendant's report shifted the burden to establish a live controversy to plaintiff who failed to meet this burden as "[p]laintiff [ ]provided no evidence contradicting [defendant's expert's] findings or demonstrating that [d]efendant has not remedied the violations at issue."); *Johnson v. Torres Enterprises LP*, No. 18-CV-02929-VKD, 2019 WL 285198, at *3 (N.D. Cal. Jan. 22, 2019) (deeming defendant's purportedly self-serving declaration sufficient to raise a factual jurisdictional attack where plaintiff fails to provide any evidence in opposition).

Moreover, Shayler fails to show that the allegedly wrongful behavior might reasonably recur. *See Norman-Bloodsaw*, 135 F.3d at 1274. Shayler argues that ADA violations are likely to recur here because "defendants have a pattern and practice of neglecting" their parking lot, and that they only brought the parking lot into compliance because of the lawsuit against them. (Opp'n 15.) However, Shayler's arguments is purely speculative. Shayler visited the Nursery in May, July, and September 2019. (FAC ¶ 13.) By November 2019, the Patels and Uribe had paved the parking lot in compliance with federal and CA state standards. (Decl. of Vinood Patel ¶ 4.) There is no record that Defendants previously violated ADA standards, and once notified of the noncompliance at issue here, they took prompt steps to

remedy the problem. Thus, the Court determines no basis to find that noncompliance would recur. *Whitaker*, 2020 WL 1972291, at *4 (finding plaintiff's arguments purely speculative that noncompliance would recur).

The Court finds that Defendants' parking lot no longer violates the ADA and that the remedied violation is not likely to recur.[3] Plaintiff's claims, insofar as they are premised on violations in the parking lot, are moot. Thus, the Court must dismiss these claims. *Dufresne v. Veneman*, 114 F.3d 952, 954 (9th Cir. 1997) ("If the case has become moot, . . . we are required to dismiss it."). Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES WITH PREJUDICE** Shayler's claims that are premised on parking lot violations.

## B.   Standing

Next, the Court addresses whether Shayler has standing to bring the remaining claims under the ADA—violations premised on changes in level at the front entrance and the interior of the Nursery. Here, Uribe mounts a facial attack, and thus, the Court assumes Shayler's proffered allegations as true. (*See* Mot. 3–7.) Specifically, Uribe argues that the Shayler lacks standing to bring his ADA claim because he fails to demonstrate how any barriers he encountered were related to his alleged disability, and that any injury Shayler suffered is not concrete and particularized. (Mot. 3–7.) Uribe also argues that Shayler fails to adequately allege that he has been deterred from returning, or that he intends to return as required under the ADA. (Mot. 7–13.)

Like all plaintiffs, ADA plaintiffs must establish standing at each stage of the litigation, but the "Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting

---

[3] Thirteen of the fifteen violations that Shayler allegedly faced during his visits relate to the parking lot; the other two relate to changes in level at the Nursery's front entrance and its interior. (FAC ¶ 22.)

6

*Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).  To establish Article III standing, Shayler must demonstrate that:

> (1) he has suffered an "injury in fact" that is concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the challenged actions of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bernhardt v. City of Los Angeles*, 279 F.3d 862, 868–69 (9th Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 180–81 (2000)).

"[A] 'barrier' will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility *on account of his particular disability*." *Chapman*, 631 F.3d at 947 (emphasis added).  As "the [ADA Accessibility Guidelines ("ADAAG")] establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA," thereby satisfying the first element of standing, injury-in-fact. *Id*.

Here, Shayler alleges that he has limited mobility in his legs and uses a walker when needed.  (FAC ¶ 1.)  Thus, the question presented is whether the alleged ADA violations are the type to affect Shayler's full and equal enjoyment of the Nursery on account of his particular disability.

The remaining two alleged ADA violations, change in level, are based on ADA 2010 § 303.3.  (FAC ¶ 22.)  The advisory following the section states the following:

> As used in this section, the phrase "changes in level" refers to surfaces with slopes and to surfaces with abrupt rise exceeding that permitted in Section 303.3. Such changes in level are prohibited in required clear floor and ground spaces, turning spaces, and in similar spaces *where people using wheelchairs and other mobility devices must park their mobility aids* such as in wheelchair spaces, or maneuver to use elements such as at doors, fixtures, and telephones. The exception permits slopes not steeper than 1:48.

7

ADAAG § 304.2 (2010), https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf (emphasis added). The advisory explains that the regulations on changes in level aim to assist those with disabilities requiring wheelchairs or other motorized devices that can be "parked." Thus, it is not apparent how Shayler suffered an injury by encountering a violation of the change-in-level regulation given that his disability requires only an occasional use of a walker. In fact, Shayler fails to allege that he utilized a walker the day he visited the Nursery, let alone that the walker should qualify as a wheelchair or mobility device. On these scant allegations, the Court cannot find that Shayler suffered an injury based on his particular disability. Therefore, the Court concludes that Shayler lacks standing to bring an ADA claim premised on change-in-level regulations. *See Chapman*, 631 F.3d at 947. To the extent that further details about Shayler's visits to the Nursery *could* remedy the deficiency identified, the Court **GRANTS** the Motion as to Shayler's change-in-level claims **WITH LEAVE TO AMEND**.

## V. CONCLUSION

For the foregoing reasons, the Court **DISMISSES without leave to amend** Shayler's ADA claims premised on parking lot violations and **DISMISSES with leave to amend** Shayler's ADA claims premised on change-in-level violations.

**IT IS SO ORDERED.**

July 31, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**