Anoush Hakimi (State Bar No. 228858)
*anoush@handslawgroup.com*
Peter Shahriari (State Bar No. 237074)
*peter@handslawgroup.com*
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (323) 672-8281
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SHAYLER,<br><br>             Plaintiff,<br><br>     v.<br><br>VINOOD PATEL, as an individual;<br>CHAYA PATEL, as an individual;<br>JOSE URIBE dba V & N NURSERY;<br>and Does 1-10,<br><br>             Defendants. | Case No.: 2:20-cv-00235-ODW-KS<br><br>Hon. Otis D. Wright, II<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(1), (6)**<br><br><br>Date:  October 19, 2020<br>Time:  1:30 p.m.<br>Courtroom:  5D |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..........................................................................7

II.   PLAINTIFF HAS STANDING TO PROCEED ON HIS ADA CLAIM ...9

  A.   EXCESSIVE CHANGES IN LEVEL ........................................11

  B.   EXCESSIVE SLOPES AND MISSING RAMPS.........................13

  C.   LACK OF CLEAR FLOOR SPACE.........................................14

  D.   NO ACCESSIBLE ROUTE OF TRAVEL .................................15

  E.   INADEQUATE SIGNAGE ...................................................16

  F.   FADED ACCESSIBLE PARKING SPACE LINES, AND
       MISPLACED SIGN ...........................................................17

  G.   EXCESSIVE SLOPES OF PARKING SPACE AND ADJACENT
       ACCESS AISLE ...............................................................18

III.  PLAINTIFF HAS PROPERLY ALLEGED AN INTENT TO
      RETURN .............................................................................19

IV.   THERE IS A REAL THREAT OF REPEATED INJURY ......................22

V.    DEFENDANTS' LATE FILED SUPPLEMENTAL DECLARATION
      SHOULD BE DISREGARDED.................................................24

VI.   PLAINTIFF SUFFICIENTLY PLED AN ADA CAUSE OF ACTION ..27

VII.  CONCLUSION.........................................................................29

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Arnold v. United Artists Theatre Circuit, Inc.,*
      866 F. Supp. 433 (N.D. Cal. 1994).............................................................16

*Ashcroft v. Iqbal,*
      556 U.S. 662 (2009)....................................................................................27

*Barker v. Riverside Cty. Office of Educ.,*
      584 F.3d 821 (9th Cir. 2009) .....................................................................17

*Bell Atl. Corp. v. Twombly,*
      550 U.S. 544 (2007).....................................................................................27

*Broam v. Bogan,*
      320 F.3d 1023 (9th Cir. 2003) ...................................................................28

*Chapman v. Pier 1 Imports,*
      631 F.3d 939 (9th Cir. 2011) .................................... 10, 15, 18, 19

*City of Los Angeles v. Lyons,*
      461 U.S. 95 (1983)........................................................................................27

*City of Mesquite v. Aladdin's Castle, Inc.*
      455 U.S. 283 (1982).....................................................................................23

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.,*
      867 F.3d 1093 (9th Cir. 2017) ...................................................................10

*D'Lil v. Stardust Vacation Club,*
      CIV-S-00-1496 DFL PAN, 2001 WL 1825832
      (E.D. Cal. Dec. 21, 2001) ...........................................................19, 21, 22

*Doran v. 7-Eleven, Inc.,*
      524 F.3d 1034 (9th Cir. 2008) .......................9, 10, 15, 17, 18, 19

*Fortyune v. American Multi-Cinema, Inc.,*
      364 F.3d 1075 (9th Cir. 2004) ...................................................................22

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,*
    528 U.S. 167 (2000)...............................................................................23

*Gilligan v. Jamco Dev. Corp.,*
    108 F.3d 246 (9th Cir. 1997) ..............................................................27

*Harris v Stonecrest Care Auto Center, LLC,*
    472 F. Supp. 2d 1208 (S.D. Cal. 2007) ....................................19

*Johnson v. Overlook at Blue Ravine,*
    2012 U.S. Dist. LEXIS 102056 (E.D. Cal. July 20, 2012)........................21

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)...............................................................9, 13, 19, 20

*Moeller v. Taco Bell Corp.,*
    816 F. Supp. 2d 831 (N.D. Cal. 2011)................................................23, 24

*Molski v. Evergreen Dynasty Corp.,*
    500 F.3d 1047 (9th Cir. 2007) ............................................................22

*Molski v. M.J. Cable, Inc.,*
    481 F.3d 724 (9th Cir. 2007) ..............................................................28

*O'Shea v Littleton,*
    414 U.S. 488 (1974)...........................................................................22

*Pickern v. Holiday Quality Foods Inc.,*
    293 F. 3d 1133 (9th Cir. 2002) ..........................................................10

*Trafficante v. Metro. Life Ins. Co,*
    409 U.S. 205 (1979) ...........................................................................9

*United States v. Concentrated Phosphate Export Ass'n,*
    455 U.S. 283 (1982)...........................................................................23

*Woods v. City of Greensboro,*
    855 F.3d 639 (4th Cir. 2017) ..............................................................27

1

2

# STATUTES, RULES, AND REGULATIONS

1991 ADA Standards for Accessible Design, § 4.1.2(1) ....................................15

1991 ADA Standards for Accessible Design, § 4.2.1 .........................................14

1991 ADA Standards for Accessible Design, § 4.3.2(1) ....................................15

1991 ADA Standards for Accessible Design, § 4.6.3 .........................................18

1991 ADA Standards for Accessible Design, § 4.6.4 .........................................18

1991 ADA Standards for Accessible Design, § 4.8.1 .........................................13

1991 ADA Standards for Accessible Design, § 4.8.4 .........................................14

2010 ADA Standards for Accessible Design, § 303.3 .........................................11

2010 ADA Standards for Accessible Design, § 304.2 .........................................11

2010 ADA Standards for Accessible Design, § 502.2 .........................................18

2010 ADA Standards for Accessible Design, § 502.3.3 .....................................16

2010 California Building Code, § 1118B.1 .......................................................14

2010 California Building Code, § 1129B.3 .......................................................18

2010 California Building Code, § 1129B.4 ............................................ 16, 17, 18

2010 California Building Code, § 1133B.5.1 ....................................................13

California Unruh Civil Rights Act, § 51 ..........................................................16

California Unruh Civil Rights Act, § 52 ..........................................................16

Federal Rules of Civil Procedure, Rule 12(b)(6)..............................................27

Local Rules for the Central District of California, Rule 6-1 ...............................24

Local Rules for the Central District of California, Rule 7-4 ...............................24

Local Rules for the Central District of California, Rule 7-5 ...............................24

I.      **INTRODUCTION**

In their Motion to Dismiss Second Amended Complaint (the "Motion"), Defendants make baseless, accusatory statements to distract from their past and present failures to operate their property in compliance with the Americans with Disabilities Act (ADA).  Plaintiff, a local gardening enthusiast, is a disabled individual with mobility impairment who uses a walker as needed.  *See* Declaration of James Shayler ("Shayler Decl.") ¶¶ 5, 9.  As a result of the barriers to access at Defendants' property, Plaintiff could not fully use and enjoy the V & N Nursery, the business on the property, during several previous attempts to visit.  Shayler Decl. ¶ 10; Second Amended Complaint (SAC) ¶¶ 21-23 (5:12-7:28).  Although he wants to return to his local gardening shop in furtherance of his hobby as soon as possible, Plaintiff cannot do so because he knows he will only encounter further barriers, causing him the same frustration, difficulty, and humiliation he experienced during previous attempts to patronize the business.  Shayler Decl. ¶ 12; SAC ¶¶ 23 (7:27-28), 27 (10:25-11:1).  Accordingly, Plaintiff has standing because he has been injured as a result of Defendants' conduct, and properly seeks recourse from this Court.

Several relevant violations have already recurred since this Court dismissed allegations regarding parking lot violations from the First Amended Complaint (FAC).  *See* ECF Doc. 50, 7/31/20 Order; Declaration of Marc Friedlander

("Friedlander Decl.") ¶¶ 2-3, 6-13.  The Court determined that parking lot violations in the FAC were moot because Defendants stated that they had recently paved the parking lot, and that their expert found no ADA violations.  ECF Doc. 50 (4:3-11); Declaration of Anoush Hakimi ("Hakimi Decl.") ¶ 3.

Defendants attempt to cast doubt on the extent of Plaintiff's disabilities to distract from their continued failure to remedy the ongoing barriers at the property. Defendants argue that they have the right to discriminate against Plaintiff just because he uses a walker "at times," as if Plaintiff would be considered any less disabled just because he does not always use a walker.  As further set forth at length below, each and every violation is relevant to Plaintiff's disability as an individual who has limited mobility, a history of two knee surgeries, acute sciatica, difficulty walking and standing, limited range of movement in his legs, and uses a walker at times.  Shayler Decl. ¶ 9.

Defendants also attempt to ambush Plaintiff by submitting a late Supplemental Declaration from their expert, in clear violation of Local Rules.  *See* ECF Doc. 53.  Defendants filed this Supplemental Declaration in bad faith just a few days before Plaintiff's opposition is due.  *See* Hakimi Decl. ¶ 9.  The Court should disregard the Supplemental Declaration; in any case, the late declaration is insufficient to show that Defendants cured the myriad violations detailed below.

For the following reasons, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety.  If the Court is inclined to grant any part of Defendants' motion, Plaintiff should be granted leave to amend the SAC under Rule 15(a).

## II.   PLAINTIFF HAS STANDING TO PROCEED ON HIS ADA CLAIM

In order for a plaintiff to demonstrate standing:  (1) the plaintiff must have "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there must be a "causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  In cases involving violations of civil rights, including the ADA, courts embrace a "broad view" of constitutional standing.  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

In the context of ADA discrimination claims, the Ninth Circuit recognizes a deterrent effect doctrine.  With respect to the "actual or imminent" injury requirement, the Ninth Circuit held, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'" *Doran*, 524 F.3d at 1040

(quoting *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)).

A plaintiff need not personally encounter a barrier to demonstrate injury. Instead, "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1099 (9th Cir. 2017). Indeed, "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts." *Doran*, 524 F.3d at 1042, n.5. In *Chapman v. Pier 1 Imports*, 631 F.3d 939 (9th Cir. 2011), the court held, "The ADA specifically does not require that the disabled individual personally encounter each architectural barrier as a predicate to seeking its removal." *Chapman*, 631 F.3d at 950.

In their Motion, Defendants mistakenly assert that a plaintiff with disabilities must *personally* encounter a barrier. Their assertion is not consistent with *Doran*. *Doran*, 524 F.3d at 1042, n.5. In this case, Plaintiff encountered the following barriers, or knows he would encounter such barriers as a mobility-impaired individual. *See* Sections II.A. - II.G, *infra*. Thus, Plaintiff has suffered actual or imminent injury as set forth below. The Court can remedy each and

every violation identified below by ordering Defendants to comply with the ADA and California Building Code (CBC), and should deny the Motion accordingly.

### A.   Excessive Changes in Level

There were changes in level greater than one-half inch, that did not have a ramp, both inside the building and at the front entrance.  SAC ¶ 21 (7:13-23).  This Court's Order dated July 31, 2020 dismissed some violations with prejudice, but afforded Plaintiff an opportunity to clarify the claims regarding changes in level. ECF Doc. 50, 7/31/20 Order, 8:10-14.  Plaintiff now seeks to provide more context for the Court.

Section 303.3 of the 2010 ADA Standards for Accessible Design (ADAS) states, "changes in level between 1/4 inch (6.4 mm) high minimum and 1/2 inch (13 mm) high maximum shall be beveled with a slope not steeper than 1:2."  2010 ADAS § 303.3.  Respectfully, the advisory cited by the Court in its July 31, 2020 decision pertains to Section 304.2, which falls under a different section specifically about turns.  ECF Doc. 50, 7:21-8:2.  Plaintiff is not alleging a violation of Section 304.2.  Even so, the advisory states, "such changes in level are prohibited in required clear floor and ground spaces, turning spaces, and similar spaces where people using wheelchairs and other mobility devices must park their mobility aids such as in wheelchair spaces, or maneuver to use elements ***such as at doors, fixtures***, and telephones."  Advisory Note, 2010 ADAS § 304.2 (emphasis added).

---

Here, one change in level violation was located at a door, which Plaintiff would have to maneuver to enter the building.  SAC ¶ 21 (7:13-16).  The other change in level violation pertained to the indoor space, where Plaintiff would need to maneuver to retrieve plants from fixtures on the loose, rocky ground.  Friedlander Decl. ¶ 5; Shayler Decl. ¶ 10; SAC ¶ 21 (7:18-23).

The Court also raised a question as to whether a walker qualifies as a mobility device.  ECF Doc. 50, 8:6-8.  The United States Department of Justice Civil Rights Division, Disability Rights Section released an overview of the 2010 ADA Standards for Accessible Design, in which it defined a mobility device to include a walker.  The guidance states, "People with mobility, circulatory, respiratory, or other neurological disabilities use many kinds of devices for mobility.  Some use *walkers*, canes, crutches, or braces."[1]  (emphasis added). Plaintiff used his walker on multiple visits to the property.  SAC ¶ 13 (4:16-18). Therefore, Plaintiff would have been using a mobility device according to the Department of Justice's definition.  Even if Plaintiff did not use his walker every time, it would be unjust to allow discrimination against Plaintiff when he does require his walker.  Plaintiff encountered these barriers, and he was not able to

---

[1] U.S. Department of Justice, Civil Rights Division, Disability Rights Division, *Wheelchairs, Mobility Aids, and Other Power-Driven Mobility Devices*, ADA.Gov, https://www.ada.gov/opdmd.htm.

fully access the property due to these barriers, which caused him difficulty, humiliation, and/or frustration.  SAC ¶¶ 22-24 (7:25-8:1).  Thus, Plaintiff has established injury, causation, and redressability.  *See Lujan*, 504 U.S. at 560-561.

**B.    Excessive Slopes and Missing Ramps**

When Plaintiff visited the property, there were multiple areas in the exterior and interior of the business where the slope exceeded five percent (5%), and reached as high as nine percent (9%), but no ramps were provided.  SAC ¶ 21 (6:22-7:1).  These violations persisted as of Plaintiff's expert's August 10, 2020 inspection.  Friedlander Decl. ¶¶ 3-4.

The Court's Order dismissed all claims premised on parking lot violations. ECF Doc. 50, 6:8-10.  However, the Order later stated that, after dismissing all claims premised on parking lot violations, only the change in level violations remained.  ECF Doc. 50, 6:12-14.  Petitioner respectfully requests clarification of this point, as some ramp violations did not occur in the parking lot.  Hakimi Decl. ¶ 5, 7; Friedlander Decl. ¶ 4.  If the Court has not dismissed the ramp violation claims with prejudice, Plaintiff respectfully submits the following in support.

Any slope greater than five percent (5%) "shall be considered a ramp," which has additional requirements that are not met here.  2010 CBC § 1133B.5.1; 1991 ADAS § 4.8.1.  For example, ramps shall have level landings at the top and

bottom.  1991 ADAS § 4.8.4.  Those landings were not present here.  *See*

Friedlander Decl. ¶ 4.

When Plaintiff visited the property, he encountered these barriers, which

prevented him from fully accessing the premises, causing difficulty, humiliation,

and frustration.  SAC ¶¶ 22-24 (7:25-8:1); Shayler Decl. ¶ 10.  These barriers still

exist.  Friedlander Decl. ¶¶ 3-4. Thus, Plaintiff has standing to pursue these claims.

### C.    Lack of Clear Floor Space

Plaintiff encountered narrow corridors in the nursery, which prevented him

from navigating the store.  SAC ¶ 21 (7:4-10); Shayler Decl. ¶ 10.  Similar to the

barriers discussed in Section II.B., *supra*, the lack of clear floor space is inside the

business, not in the parking lot.  Friedlander Decl. ¶ 5.  Plaintiff should be allowed

to proceed on this claim if, as he understands, it was not stricken by the Court with

prejudice in the July 31, 2020 Order.  Hakimi Decl. ¶ 8.

Although the relevant provisions pertain to wheelchair users (2010 CBC §

1118B.1; 1991 ADAS § 4.2.1), walker users must also have a clear and sufficiently

wide path to navigate.  When Plaintiff's expert inspected the property on August

10, 2020, there were several instances of fallen plants, large hoses, and flower pots

obstructing the corridors.  Friedlander Decl. ¶¶ 3, 5.  Any obstruction in the path

would make it difficult, if not impossible, for Plaintiff to maneuver his walker.

Additionally, there are pathways inside the nursery that are as narrow as 17 inches,

which certainly would not allow enough space for someone to pass through with a walker.  Friedlander Decl. ¶ 5.  Plaintiff visited the property and encountered these barriers to access, causing him great discomfort, humiliation, and/or frustration. SAC ¶¶ 22-24 (7:25-8:1); Shayler Decl. ¶ 10.  Accordingly, Plaintiff has standing.

### D.    No Accessible Route of Travel

Plaintiff's expert observed that, as of the date of his inspection on August 10, 2020, there was no accessible route of travel linking the public transport zones, parking, passenger loading zones, and public street or sidewalks they serve to the building entrance.  SAC ¶ 25 (8:9-21); Friedlander Decl. ¶¶ 3, 6.  As Plaintiff's expert documented, there is a railing with an abrupt change in level, and multiple holes, cracks, and divots in the pavement that exceed one-half inch.  Friedlander Decl. ¶ 6.  This violates 1991 ADAS §§ 4.3.2(1) and 4.1.2(1).

Plaintiff did not personally encounter this barrier; however, as a walker user, he would be at heightened risk of tripping on the rail and on the holes, cracks, and divots in the pavement.  SAC ¶¶ 1, 13, 25 (2:1-13, 4:16-17, 8:9-21).  Plaintiff was made aware of this barrier by his expert, and with this knowledge, reasonably feels that he cannot return to the property at present.  Shayler Decl. ¶ 11-12; SAC ¶ 27 (10:25-11:1).  Accordingly, Plaintiff has suffered an injury, and thus demonstrated standing.  *Doran*, 524 F.3d at 1040; *Chapman*, 631 F.3d at 950.

### E.     Inadequate Signage

During his land inspection on August 10, 2020, Plaintiff's investigator observed that the tow company information was handwritten on the off-street-unauthorized-parking sign, and that the height of the letters measured less than one inch.  SAC ¶ 25 (8:24-9:1); Friedlander Decl. ¶¶ 3, 7.  Plaintiff's investigator also observed faded paint at the designated parking spaces, including an International Access Symbol that was illegible because it was so worn.  SAC ¶ 25 (9:13-9:20); Friedlander Decl. ¶ 9.  The California Building Code ("CBC") mandates that signs conspicuously include towing information "as a permanent part of the sign."  2010 CBC § 1129B.4.  The surface signage should include the International Access Symbol painted in "suitable contrasting color."  *Id.*

Contrary to Defendants' assertion, CBC violations are relevant to this case because Plaintiff also pled a state-law cause of action for violation of the California Unruh Civil Rights Act (UCRA) §§ 51, *et seq.*, 52, *et seq.*  SAC ¶¶ 1, 47 (2:6-10, 15:5-8).  Plaintiff may properly seek damages under the UCRA for violation of state anti-discrimination laws, including the CBC.  *See Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).  Moreover, violations of state building codes are potentially relevant to an ADA cause of action.  *See*, *e.g.*, ADAS § 502.3.3 (relating to the marking of disabled parking spaces; stating that "[t]he method and color of marking are not specified

by these requirements but may be addressed by State or local laws or regulations"). CBC § 1129B.4 provides the exact method and color of marking required, consistent with ADAS § 502.3.3. Thus, in this case, the CBC violations are relevant.

Plaintiff has undergone two knee replacement surgeries, suffers from an acute pinched nerve and arthritis, has difficulty walking and standing, has limited range of movement in his legs, and uses a walker. SAC ¶ 1 (2:2-13). The handicap spaces located closest to the entrance are supposed to accommodate individuals like Plaintiff who have difficulty walking and standing. Shayler Decl. ¶ 9. The towing company information and surface signage are supposed to deter non-handicapped individuals from parking in the handicap space. If the handicapped parking space is constantly filled with non-handicapped individuals' cars, handicapped individuals cannot fairly access the premises. Accordingly, Plaintiff can demonstrate standing to pursue this claim because he has been injured as he is aware of this existing barrier, and the barrier is causing him injury because he is reasonably deterred from visiting the premises. SAC ¶ 27 (10:25-11:1); Shayler Decl. ¶ 11-12; *Doran*, 524 F.3d at 1040.

### F. Faded Accessible Parking Space Lines, and Misplaced Sign

Plaintiff's expert also noted, during his visit on August 10, 2020, that the accessible parking space lines were faded, such that the width and location of the

---

space was not clearly discernible.  Friedlander Decl. ¶¶ 3, 8; SAC ¶ 25 (9:4-10).

Moreover, the designated accessible parking space sign was not centered.

Friedlander Decl. ¶ 10; SAC ¶ 25 (9:23-10:4).  This violates both state and federal

law.  2010 CBC § 1129B.3, 1129B.4; 1991 ADAS § 4.6.3, 4.6.4; 2010 ADAS §

502.2.

As discussed in Section II.E., *supra*, it is imperative that accessible parking

is reserved for those who have disabilities.  Mr. Shayler has assorted disabilities

which make it difficult for him to ambulate.  SAC ¶ 1 (2:2-13); Shayler Decl. ¶ 9.

As a result, he needs to access the parking space closest to the entrance.  Plaintiff

is aware of this ongoing barrier noted by his expert; thus, he is reasonably deterred

from visiting the property, and has suffered an injury.  SAC ¶ 27 (10:25-11:1);

Shayler Decl. ¶ 11-12; *Doran*, 524 F.3d at 1040; *Chapman*, 631 F.3d at 950.

### G.   Excessive Slopes of Parking Space and Adjacent Access Aisle

At the August 10, 2020 inspection, Plaintiff's expert identified two

additional barriers – excessive slopes of the parking space and the adjacent access

aisle.  Friedlander Decl. ¶¶ 3, 11-12; SAC ¶ 25 (10:6-16).  As set forth in the ADA,

"parking spaces and access aisles shall be level with surface slopes not exceeding

1:50 (2%) in all directions."  1991 ADAS § 4.6.3.

As a person who uses a walker, has limited range of movement in his legs,

and suffers from a pinched sciatic nerve, Plaintiff would have difficulty navigating

a sloped parking space.  Shayler Decl. ¶ 9.  As with the aforementioned violations,

Plaintiff has learned of this barrier and is reasonably deterred from visiting the

premises, though he intends to do so once the violation is cured.  *Doran*, 524 F.3d

at 1040; *Chapman*, 631 F.3d at 950; Shayler Decl. ¶ 11-12.  Accordingly, Plaintiff

has standing.  *Lujan*, 504 U.S. at 560-561.

## III.   PLAINTIFF HAS PROPERLY ALLEGED AN INTENT TO RETURN

"To demonstrate a real threat of future harm, the plaintiff must establish a

likelihood of returning to the defendants' premises."  *D'Lil v. Stardust Vacation

Club*, No. CIV-S-00-1496DFL PAN, 2001 WL 1825832, at *3 (E.D. Cal. Dec. 21,

2001).  Courts apply a four-part test for ADA standing, evaluating (1) the

proximity of the place of the public accommodation to plaintiff's residence, (2)

plaintiff's past patronage of defendant's business, (3) the definitiveness of

plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.

*Harris v. Stonecrest Care Auto Center, LLC*, 472 F. Supp. 2d. 1208, 1216 (S.D.

Cal. 2007).

Contrary to Defendants' baseless assertions, Plaintiff can establish that he

has a legitimate intention to visit the property as soon as Defendants make it safe

for him to do so.  The subject property is located within approximately five (5) to

ten (10) minutes' driving distance from Plaintiff's home, depending on traffic.

Shayler Decl. ¶ 3.  Plaintiff is a gardening enthusiast, so he is eager to return to the

property once the violations are remedied.  Shayler Decl. ¶¶ 5, 12.  The V & N

Nursery also carries a large assortment of plants, gardening equipment, and other

products.  Shayler Decl. ¶ 6.  Plaintiff is deterred from returning to the V & N

Nursery because of his knowledge of the existence of access barriers, but plans on

returning when the subject property is ADA compliant, because it is conveniently

located close to his home, and has a vast assortment of plants and other gardening

products.  Shayler Decl. ¶¶ 11-12.  In fact, the property is so close to his home,

Plaintiff travels near it on nearly a daily basis.  Shayler Decl. ¶ 8.

Defendants cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) in

support of their position that Plaintiff has not established standing on the basis that

Plaintiff did not provide a concrete date when he plans to return.  This reliance is

misplaced for several reasons.  First, the problematic allegation in *Lujan* only

indicated an intent to return "in the future."  *Id.*  In this case, Plaintiff intends to

return to the property as soon as it is ADA compliant, as he lives just a few

minutes away and drives nearby daily; but it is impossible to identify a specific

date of return because it depends on when Defendants remove the barriers to the

property.  Shayler Decl. ¶¶ 3, 8, 12.  Second, in *Lujan*, the Court opined, "Such

'some day' intentions – without any description of concrete plans, or indeed even

any specification of *when* the some day will be – do not support a finding of

'actual or imminent' injury that our cases require."  *Lujan*, 504 U.S. at 564

(emphasis in original).  In this case, Plaintiff has identified *when* that "some day" will be – that is, as soon as Defendants make the property ADA compliant. Shayler Decl. ¶ 12.

Further, Defendants rely on *Johnson v. Overlook at Blue Ravine*, 2012 U.S. Dist. LEXIS 102056 (E.D. Cal. July 20, 2012).  *Johnson* is distinguishable as well, because the plaintiff there did not live in the town where the property was located, had no ties to the area, and expressed no definitive intent to return.  *Id.* at *9. Plaintiff here lives just a few minutes away, is an avid gardener, and hopes to return as soon as possible to patronize the store because of its vast selection of gardening supplies.  Shayler Decl. ¶¶ 5, 12.  As set forth above, it is impossible for Plaintiff to state a date he intends to return, because he is not able to return until Defendants remediate the property, but he does intend to return as soon as the barriers are removed.  *Id.* at ¶ 12.

Defendants' attacks on Plaintiff's credibility are without merit, irrelevant, and only seek to distract.  While such information may sometimes be relevant and admissible in certain cases as to issues of motive, state of mind, and credibility, the Ninth Circuit has rejected the use of past ADA litigation to impugn the credibility of ADA plaintiffs.  *See D'Lil v. Best Western Encino Lodge & Suites*, 538 F. 3d 1031, 1040 (9th Cir. 2008).  This is exactly what Defendants are attempting to do here.  The Ninth Circuit stated in *D'Lil* that "the [ADA's]

provision for injunctive relief only 'removes the incentive for most disabled

persons who are injured by inaccessible places of public accommodation to bring

suit ....  As a result, most ADA suits are brought by a small number of private

plaintiffs who view themselves as champions of the disabled ....  For the ADA to

yield its promise of equal access for the disabled, it may indeed be necessary and

desirable for committed individuals to bring serial litigation advancing the time

when public accommodations will be compliant with the ADA.'"  *D'Lil*, 538 F. 3d

at 1040, *quoting Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th

Cir. 2007).  Thus, it would be improper for the Court to judge Plaintiff's

credibility at this time, particularly on the basis that he has participated in other

lawsuits.  In any case, Plaintiff has demonstrated that he lives nearby, drives by

the property daily, is an avid gardener, and has a specific intent to return as soon

as it is possible for him to access the premises.

## IV.    THERE IS A REAL THREAT OF REPEATED INJURY

When a plaintiff seeks injunctive relief, there is an additional requirement of

showing "a sufficient likelihood that [the plaintiff] will again be wronged in a

similar way . . . [t]hat is, . . . a real and immediate threat of repeated injury."

*Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)

(quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), and *O'Shea v.*

*Littleton*, 414 U.S. 488, 496 (1974)) (internal quotations omitted).

"The test for mootness … is a stringent one.  Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways."  *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (citation and internal punctuation omitted).  Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  A claimed remedy "might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth*, *Inc. v. Laidlaw Environmental Services, Inc.* 528 U.S. 167, 167 (2000).  The party asserting mootness has "the heavy burden of persuading the Court that the challenged conduct cannot be reasonably expected to recur."  *Id*.

There is certainly a real and immediate threat of repeated injury here because, in just the last few months, the injury was repeated in this very case. Defendants have once again violated the ADA and CBC on numerous counts as set forth above.  SAC ¶¶ 21 (6:23-7:23), 25 (8:9-10:16).  In *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831 (N.D. Cal. 2011), the defense raised the voluntary cessation claim and identified the existence of written policies and an actual maintenance contract it had entered into to demonstrate that the violations would

not recur in the future.  The Court declined to find mootness because polices could

be "rescind[ed] at any time," the defendant "had on multiple occasions not

followed its policy that accessible parking spaces have required signage," the

defendant "could change these policies – by, for example, not renewing its year-to-

year contract with [maintenance company]," and so on.  *See Moeller*, 816 F. Supp.

2d at 860-62.  Here, Defendants have failed to maintain the premises such that

violations have already recurred even during the few-months span of this lawsuit.

SAC ¶ 21 (6:23-7:10); ¶ 25 (8:9-10:16).  Defendants' conduct to date demonstrates

that violations will most likely recur in the future.

## V.    DEFENDANTS' LATE FILED SUPPLEMENTAL DECLARATION SHOULD BE DISREGARDED

The Federal Rules of Civil Procedure, and the Local Rules in the Central

District of California, impose strict rules to ensure that cases proceed fairly.  In

fact, "the Court may decline to consider a motion unless it meets the requirements

of L.R. 7-3 through 7-8."  C.D. Cal. L.R. 7-4.  With every notice of motion, which

must be filed at least 28 days prior to the hearing (C.D. Cal. L.R. 6-1), the movant

must file "the evidence upon which [it] will rely."  C.D. Cal. L.R. 7-5.

Defendants' Supplemental Declaration was filed on September 24, 2020.  ECF

Doc. 53; Hakimi Decl. ¶ 9.  The hearing date for Defendants' Motion is October

19, 2020, which is less than 28 days away from the filing of the Supplemental

Declaration. *Id.* Not only did Defendants fail to file the Supplemental Declaration (their evidence) with the Notice of Motion, as required under L.R. 7-5, Defendants also violated L.R. 6-1 by filing it late. In fact, Defendants exhibited bad faith and sought to ambush Plaintiff by filing the Supplemental Declaration just days before Plaintiffs' opposition was due. *Id.* Plaintiff was notified that Defendants filed the Supplemental Declaration on the afternoon of Thursday, September 24, 2020. *Id.* Plaintiff's opposition is due on Monday, September 28, 2020, which also happens to be a religious holiday. *Id.* This affords Plaintiff just ***one day***, given the religious holiday and the weekend, to investigate Defendants' new assertions. *Id.*

Moreover, in the Supplemental Declaration, Defendants' expert claims Defendants performed additional remediation as of September 22, 2020. ECF Doc. 53 ¶ 3 (1:12-16). Defendants' delay, as well as their sudden, last-minute attempt to remediate one violation, demonstrate bad faith. Thus, Plaintiff respectfully requests that this Court disregard Defendants' late-filed declaration.

Even if this Court declines to disregard the Supplemental Declaration, over Plaintiff's objection, Plaintiff submits that Defendants failed to demonstrate removal of the barriers. Defendants' expert claims that, even though the violation supposedly pertained only to wheelchair users, Defendants supposedly made "minor alterations regarding the width and striping of the walkway, which was completed on September 22, 2020." ECF Doc. 53 ¶ 3 (1:15-16). The expert fails

to explain which walkway he is referring to, how the width was altered, and where the striping occurred.  *Id.*  He also fails to include a photograph or any other visual evidence to support his statement.  Further, as described at length above, Plaintiff's expert found extensive evidence, as documented in his many photographs filed concurrently with his Declaration, supporting the fact that various corridors would be inaccessible to both wheelchair *and* walker users due to their narrow width and numerous obstructions.  Friedlander Decl. ¶ 5.

Defendants' expert's second and final claim is that "the accessible route from the public way to the entrance and from the accessible parking to the building entrance both have detectable warnings appropriately placed, have been marked with striping, is the correct width and slope and has compliant appropriate signage installed."  ECF Doc. 53 ¶ 4 (1:18-22).  The expert then attaches a picture that shows no evidence that detectable warnings were appropriately placed, and does not reflect a single measurement to demonstrate the correct width.  ECF Doc. 53 at Exhibit 1.  The photograph shows striping in a single area out of many in need of attention, and reveals that Defendants have not addressed the multiple instances of faded paint used for the accessible parking space lines or the International Access Symbol.  *Id.*; SAC ¶ 25 (9:4-21).  Further, the photograph does not show that the sign has been properly placed in the center of the parking space as required, or that Defendants fixed the inadequate tow sign.  *Id.*  Moreover, there is nothing in the

photograph to support the expert's subsequent statement that "the surface is level throughout and does not exceed allowable cross or running slopes."  ECF Doc. 53 ¶ 4 (1:22-23).  The level in the photograph does not show a visible number, nor does Defendants' expert reference the number supposedly reflected by the level, so it is unclear whether the slope is proper.  *Id.*  Overall, Defendants' conclusory and late-filed supplemental declaration hardly supports their position that all barriers have been remediated, and Plaintiff should be allowed to proceed on his claims.

## VI.    PLAINTIFF SUFFICIENTLY PLED AN ADA CAUSE OF ACTION

Rule 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a defendant's motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to the plaintiff.  *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  If the complaint provides fair notice of the claim, and the factual allegations are sufficient to show that the right to relief is plausible, a court should deny the defendant's motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-56; *Woods v. City of Greensboro*, 855 F.3d 639, 652-53 & n. 9 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017).

"A motion to dismiss for failure to state a claim is generally viewed with disfavor and is rarely granted."  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249

(9th Cir. 1997) (quotations omitted).  Only in extraordinary circumstances will a court grant dismissal without leave to amend.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

To prevail on a discrimination claim under Title III of the Americans with Disabilities Act, a plaintiff must show that: (1) he or she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied equal access to public accommodations by the defendant because of his or her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Defendants baselessly and oppressively question Plaintiff's status as a person with disabilities.  Plaintiff pled that he has undergone two knee replacement surgeries, suffers from an acute pinched sciatic nerve, has arthritis, experiences difficulty walking and standing, is mobility-impaired, and uses a walker.  SAC ¶ 1 (2:2-10); Shayler Decl. ¶ 9.  The State of California has agreed that Plaintiff has disabilities because it issued him a blue permanent Disabled Person Parking Placard.  SAC ¶ 1 (2:10-13); Shayler ¶ 9.  Thus, Plaintiff satisfies the first element of *Molski*, 481 F.3d at 730.  Second, Plaintiff identifies Defendants as the operators of the subject property, thereby satisfying the second element of *Molski*.  *Id.*; SAC ¶ 2 (2:15-17).  Finally, Plaintiff was denied equal access when he visited the property, and he continues to be denied equal access

because he is aware of ongoing violations, and accordingly is reasonably deterred from visiting the property.  *Id.* at ¶¶ 21 (5:12-7:23), 25 (8:3-10:16); ¶ 27 (10:25-11:1).  Therefore, Plaintiff has pled sufficient facts to state an ADA claim.

## VII.   CONCLUSION

For the foregoing reasons, and as more fully set forth herein, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety.  If the Court is inclined to grant any part of Defendants' motion, Plaintiff should be granted leave to amend the SAC under Rule 15(a).

Dated:  September 28, 2020          **THE LAW OFFICE OF HAKIMI & SHAHRIARI**

By:   /s/ Anoush Hakimi
          Anoush Hakimi, Esq.
          Attorneys for Plaintiff James Shayler